GUITAR v. FIRST STATE BANK OF HERMLEIGH et al. (No. 8470.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 18, 1916. Rehearing Denied Jan. 6, 1917.)

1. SET-OFF AND COUNTERCLAIM ⬸29(2) — COUNTERCLAIM—RELATION TO CAUSE OF ACTION.

In an action for possession of cotton seed, brought by the vendor of the gin, who held vendor's lien notes, and claimed the seed was purchased for him, against a bank which purchased the seed from the operator of the gin, and which alleged that it had furnished money to its codefendant to purchase the cotton seed in question, which such defendant had afterwards transferred to it on account of the debt, its claim for the money so advanced would support a counterclaim within Vernon's Sayles' Ann. Civ. St. 1914, art. 1330, requiring a counterclaim to be founded on a cause arising out of, incident to, or connected with, the plaintiff's cause of action.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 50; Dec. Dig. ⬸ 29(2).]

2. PRINCIPAL AND AGENT ⬸132(1)—LIABILITY OF PRINCIPAL—ACTS OF AGENT.

Where the operator of a cotton gin borrowed money from a bank during one season and the account stood in his name, the bank was not estopped, during a subsequent season, to recover from a third person, who had sold the gin and held vendor's lien notes thereon, the amount of such account, where such third person's agent, at the close of the first season, agreed that the account should stand in the name of the original debtor, but that his principal should be liable therefor.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 459, 467–469, 471; Dec. Dig. ⬸132(1).]

**3. SEQUESTRATION ⬡=16 — PLEADING AND PROOF—VARIANCE.**

In an action for recovery of possession of cotton seed, where a defendant bank alleged that it held an indebtedness against the plaintiff for money advanced and used for his benefit, the mere fact that a dishonored draft made by the principal defendant upon the plaintiff was also set up by the bank did not present a variance.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 33, 34; Dec. Dig. ⬡=16.]

**4. COSTS ⬡=60—ALLOWANCE OF COSTS—PROVING TITLE TO ALLOWANCE.**

Where plaintiff, in an action to recover cotton seed, was decreed possession thereof, but the judgment also required him to pay to a bank, claiming an account against him, the amount of such claimed account which he had refused to pay, thus requiring suit and interpleading of other parties, adjudging costs incurred by the bank against it and all other costs against the plaintiff was not unjust.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 261–271; Dec. Dig. ⬡=60.]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Suit by John Guitar against the First State Bank of Hermleigh and others. Judgment for plaintiff in part and against him on the counterclaim of the named defendant, and plaintiff appeals. Affirmed.

Hardwicke & Chambers, of Abilene, and Theodore Mack, of Ft. Worth, for appellant. Higgins & Hamilton, of Snyder, and C. G. Whitten, of Abilene, for appellees.

DUNKLIN, J. During the ginning season of 1913–14, J. A. Bills operated a cotton gin in the town of Hermleigh. In order to do so, money was borrowed from time to time from the First State Bank of Hermleigh, and on December 1, 1913, the account showed that there was due the bank the sum of $390.19. T. H. Bills, with the assistance of his son, J. A. Bills, took charge of the same gin and operated it during the season of 1914–15. He also assisted his son in the operation of the gin during the previous season. Money was advanced by the same bank to T. H. Bills for the purpose of buying cotton seed, and paying the operating expenses of the gin during the latter season, and upon the account for such advancements, there was a balance due on January 4, 1915, of $674.26. In settlement of the two accounts mentioned for the two seasons, T. H. Bills conveyed to the bank two cars of cotton seed. The bank then sold the seed to Hugh Moore and shipped the same to Abilene, with drafts attached for the purchase money. When the seed reached Abilene, John Guitar instituted a suit against the bank, T. H. Bills, Hugh Moore, and the Texas & Pacific Railway Company, who was in possession of the seed, to recover the same, and at the same time sued out a writ of sequestration, which was levied upon the seed. Later, and pending the suit, by order of the court the seed was sold as perishable property, and the proceeds deposited in court to await the outcome of the suit. The bank

filed an answer, in which it claimed title to the property by virtue of its purchase from T. H. Bills, and the fact that Moore had never paid the purchase price therefor. The bank further alleged that, in purchasing the seed from it, Moore had in fact acted as the agent of John Guitar, by whom he was employed, and had fraudulently concealed such agency for the purpose of having the seed shipped to Abilene in order that suit might be instituted in Taylor county therefor by John Guitar, his principal, rather than in Scurry county, the domicile of the bank. In the alternative, the bank pleaded the two accounts referred to above for the two ginning seasons, and prayed for judgment thereon against John Guitar in the event he should recover title to the two cars of cotton seed. Judgment was rendered in favor of the plaintiff for title and possession of the cotton seed, and with an order directing the clerk to pay over the proceeds thereof on deposit in court to him. Judgment was also rendered in favor of the bank on its counterclaim against Guitar for the amounts of the two accounts, and from that judgment the plaintiff has appealed.

The judgment also disposed of the other defendants in the suit, but the judgment in that respect will not be further noticed as the errors assigned relate only to the judgment on the counterclaim in favor of the bank.

[1] The first complaint made upon this appeal is of the judgment for the amount of the account due on December 1, 1913, incurred during the first ginning season. By different assignments, it is insisted that neither of the accounts for which judgment was rendered could be urged as a counterclaim to the present suit, since plaintiff's suit was a suit for title to the cotton seed, and those accounts were not founded on, nor arose out of, nor were incident to, nor connected with, plaintiff's cause of action, as was necessary to be shown in order to bring the counterclaim within the meaning of article 1330, Vernon's Sayles' Texas Civil Statutes. The facts recited already, in connection with the further claim, supported by pleading and evidence, that the principal part of the account for the last ginning season was for money advanced to Bills and used by him, in part, for the purchase of the cotton seed in question, we think clearly bring the counterclaim within the provisions of the statute referred to.

The evidence shows that prior to the transactions with the bank, plaintiff had sold the gin to T. H. Bills and held vendor's lien notes for the purchase money, and with the understanding that two-fifths of the amount realized from ginning, less costs of bagging and ties, should be deposited in the Hermleigh bank to plaintiff's credit and in part payment of the purchase-money notes. From

the evidence it seems that T. H. Bills did not have the money necessary to pay operating expenses of the gin, and to buy cotton seed in connection therewith, and that all cotton seed purchased by him was purchased for the plaintiff Guitar.

It is insisted that the evidence was insufficient to sustain a verdict in favor of the bank for the account of $390.19 advanced during the first ginning season. This contention is overruled as the testimony of W. W. Echols, cashier of the bank, especially in connection with the testimony of T. H. Bills, was ample to sustain a finding that the plaintiff, through his agent Moore, authorized the bank to extend the credit to J. A. Bills for the money so advanced, and agreed to pay the same. Appellant contends that the fact that the account was run in the name of J. A. Bills, and not in the name of the plaintiff, in connection with the further fact that, in the written contract between the plaintiff and T. H. Bills for the operation of the gin during the second season mentioned, provision was made for the payment, out of the proceeds of the operation of the gin, of the account incurred during the first ginning season, which was described as an indebtedness due by Bills, and a copy of which contract was turned over to the bank as soon as it was executed, was conclusive against the bank with respect to its counterclaim for the amount of that account.

[2] According to testimony offered by the bank, it was agreed between all the parties in interest that the account for the season of 1913 should be run in the name of J. A. Bills for the use and benefit of plaintiff Guitar, who would be liable therefor. The contract last referred to was executed August 31, 1914, after the accrual of the account for the previous season, and the acceptance by the bank of notice of that contract and further advancements by it thereunder for the second season could not, under the evidence in the case, have the effect of an estoppel against the bank to claim that plaintiff was liable for the previous account, nor could it, in connection with the fact that the previous account was charged in the name of J. A. Bills, have the effect, as a matter of law, to destroy the force of the testimony introduced by the bank, to the effect that Moore, as agent of Guitar, agreed to pay the account incurred during the first ginning season.

[3] It is insisted that there is a fatal variance between the bank's allegations relative to the account for the first ginning season and the proof. This contention is predicated upon the theory that the defendant's right of action was based alone upon the draft drawn by J. A. Bills upon the plaintiff for the amount of the account which was dishonored, and that that draft was alleged by the bank as a part of its cause of action against the plaintiff. There is no merit in the contention, since, in addition to the allegations of the draft, it was also alleged that the indebtedness evidenced by the account was incurred by J. A. Bills as the duly authorized agent of Guitar, and that the money advanced by the bank thereon was used for his benefit, and there was testimony sufficient to support those allegations.

Upon the trial, plaintiff requested a peremptory instruction in his favor for title to the cotton seed, and also in favor of the bank against him for the sum of $674.26, the same being the amount admitted to be due on the account for the second ginning season. The judgment on the account last named was in the exact amount so admitted. Hence appellant is in no position to complain that the same is unjust, and in fact makes no such complaint.

[4] All costs incurred by the bank were adjudged against it, while all other costs were adjudged against the plaintiff, Guitar. Appellant insists that all the costs should have been adjudged against the bank, in view of the fact that the plaintiff recovered title to the cotton seed for which he sued, and which was wrongfully withheld from him by the bank, and no facts were should which constituted a sufficient cause to adjudge the costs otherwise. As plaintiff had repeatedly refused the payment of the account of $390.19 for the first ginning season, thus rendering a suit necessary to recover the same, and as it appears from Moore's own testimony that in purchasing the seed from the bank he was acting as the agent of plaintiff, whose interest was undisclosed, and as the interpleading of him and the Texas & Pacific Railway Company was the result of such act on his part, and as the interpleading of defendant Bills resulted from a denial by plaintiff of the account for the first ginning season, we cannot say that the action of the court in adjudging the costs as was done was unjust to the plaintiff.

Several cross-assignments of error have been presented by the bank, which we will overrule without discussion, in view of the statement made by counsel for the bank in his oral argument that he would not insist upon the same, if all of appellant's assignments of error should be overruled.

For the reasons indicated, the judgment of the trial court as between the plaintiff and appellee bank is, in all things, affirmed, and the judgment, as between the other parties to the suit, is undisturbed.